Horti Americas, LLC v. Jacob's Village Farm Corp.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of January, two thousand twenty-two.

PRESENT:
> JOHN M. WALKER, JR.,
> RICHARD C. WESLEY,
> JOSEPH F. BIANCO,
> *Circuit Judges*.

---

Horti Americas, LLC,

> *Plaintiff-Appellant*,

> v.                                                                 21-915-cv

Jacob's Village Farm Corp., Jacob Yusifov,
AKA Yakov Yosofov, AKA Yakov Yosofou,
AKA Yacov Yosofov, Shy S. Yosofov,
AKA Steven Yosofov, AKA Junior,
AKA Shai Yo, Steven Produce King, Inc.,

> *Defendants-Appellees*.

---

FOR PLAINTIFF-APPELLANT:          Jeffrey M. Chebot, Whiteman, Bankes & Chebot, LLC, Philadelphia, PA.

**FOR DEFENDANTS-APPELLEES:** Kareem E. Abdo, The Law Office of Kareem E. Abdo, New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Kuntz, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED** and the matter is **REMANDED** to the district court for further proceedings consistent with this order.

Plaintiff-Appellant Horti Americas, LLC ("Horti") appeals from the March 12, 2021 judgment of the United States District Court for the Eastern District of New York (Kuntz, *J.*) dismissing Horti's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

The parties to this action are in the vegetable business. Horti sued Steven Produce King, Inc. ("SPK") and Shy Yosofov in a prior lawsuit ("*Horti I*") on February 22, 2016 for breach of contract, breach of fiduciary duty, and Perishable Agricultural Commodities Act ("PACA") violations.[1] Horti alleged that SPK contracted to purchase forty pallets of cucumbers (also referred to as "Persian pickles") on a weekly basis, accepted nine shipments but never paid for them, and wrongfully rejected a tenth shipment.

During the prior litigation, Horti served its First Set of Requests for Admission on SPK and Shy pursuant to Federal Rule of Civil Procedure 36. SPK and Shy never answered the

---

[1] PACA was enacted in 1930 to regulate the sale of perishable commodities. It requires licensing of all entities qualifying as merchants, dealers, and brokers in perishable agricultural commodities. 7 U.S.C. § 499c(a). Section 499e(c) to PACA imposes a trust upon perishable goods buyers comprised of their inventories and the proceeds from the sales of such inventories for the benefit of all unpaid sellers of agricultural commodities with whom they have transacted business. 7 U.S.C. § 499e(c)(2). Sellers of these commodities maintain a right to recover against the purchasers superior to all creditors, including secured creditors, through this trust. *See* 7 U.S.C. § 499e(c)(1); *Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.*, 67 F.3d 1063, 1067 (2d Cir. 1995).

requests, however, and the district court (Glasser, *J.*) granted Horti's motion for sanctions based on their failure to respond. The sanctions order deemed the following statement admitted: "[Shy] Yosofov transferred to himself SPK's proceeds of produce sales in an amount greater than $143,455.00 plus interest and any attorney's fees due to Horti during the period when Horti was unpaid for the Persian pickles at issue." *Horti Americas, LLC v. Steven Produce King, Inc.*, No. 16CIV889ILGRER, 2017 WL 398374, at *2 (E.D.N.Y. Jan. 30, 2017). The district court later granted Horti's motion for summary judgment and awarded $143,455 in PACA trust benefits, $7,750 for breach of contract, and attorneys' fees.

Horti filed this action ("*Horti II*") in April 2019, alleging fraudulent conveyance, successor liability, de facto merger, violations of trust obligations under PACA, and RICO violations. The defendants, in addition to Shy and SPK, included Shy's father, Jacob Yosofov, and an entity he controls, Jacob's Village Farm Corporation ("JVF"). Horti alleged that after it filed the *Horti I* complaint, the defendants transferred nearly all assets and funds out of SPK and into JVF to evade SPK's liabilities, including the judgment in the earlier action. Defendants successfully moved to dismiss the *Horti II* complaint, arguing that it was barred by *res judicata* because its claims should have been raised in the first action; the district court granted the motion. The district court concluded that the post-complaint transfer of SPK's assets to JVF was resolved in a final judgment on the merits in the previous litigation. It based this conclusion on Judge Glasser's sanctions order and his reference to that order in his decision granting summary judgment on the 2016 claims.

On appeal, Horti argues that the district court applied an incorrect *res judicata* standard and erred in holding that the claims in *Horti II* were litigated in *Horti I*. We assume the parties'

3

familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision to vacate and remand.[2]

## I. *Res Judicata*[3]

*Res judicata* is an equitable doctrine providing that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 168 (2d Cir. 2021) (citation omitted). For *res judicata* to bar a subsequent lawsuit, four requirements must be satisfied: "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Id.* We conclude that these requirements were not met in the instant case and the district court incorrectly dismissed Horti's claims as barred by *res judicata*.

At least some of the claims asserted in *Horti II* are not precluded by *Horti I* because they do not present the "same cause of action" asserted, or that could have been asserted, in the first action. *See id*. When analyzing the "same cause of action" requirement, we look to whether both lawsuits "arise from the same transaction, or involve a common nucleus of operative facts." *Cayuga Nation v. Tanner*, 6 F.4th 361, 375 (2d Cir. 2021) (citations omitted). We consider

---

[2] Horti has filed a separate motion seeking to have the Court take judicial notice of documents filed in *Horti I* in connection with discovery. Because we may take judicial notice of documents filed in the district court for purposes of analyzing a *res judicata* issue, the motion is granted. *See AmBase Corp. v. City Investing Co. Liquidating Tr.*, 326 F.3d 63, 72 (2d Cir. 2003).

[3] The standard of review is not in dispute. We review a district court's dismissal for failure to state a claim under Rule 12(b)(6) de novo. *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). We likewise review de novo a dismissal on *res judicata* grounds. *Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 55 (2d Cir. 2018).

"whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations[.]" *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000) (internal quotation marks and citation omitted). *Res judicata* bars not only the parties and their privies from relitigating claims that were actually raised in the previous action, but also claims that "could have been raised in that action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (citation omitted).

The timeframe for assessing claims that could have been raised during the prior litigation ends when the complaint in that action is filed. "For the purposes of res judicata, '[t]he scope of litigation is framed by the complaint at the time it is filed.'" *Computer Assocs. Int'l v. Altai, Inc.*, 126 F.3d 365, 369–70 (2d Cir. 1997) (quoting *Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.*, 750 F.2d 731, 739 (9th Cir. 1984)).[4]  In *SEC v. First Jersey Securities, Inc.* we stated:

> If a defendant engages in actionable conduct after a lawsuit is commenced, the plaintiff may seek leave to file a supplemental pleading to assert a claim based on the subsequent conduct. *See* Fed. R. Civ. P. 15(c). But he is not required to do so, and his election not to do so is not penalized by application of res judicata to bar a later suit on that subsequent conduct[.]

101 F.3d 1450, 1464 (2d Cir. 1996).  We added that "[i]f the second litigation involved different transactions, and especially subsequent transactions, there generally is no claim preclusion." *Id*.

The district court applied the wrong *res judicata* standard below.  It wrote that "in their statement of 'Operative Facts,' Plaintiff only presents one fact occurring *after the prior judgment*:

---

[4] We have repeated this principle a number of different ways. *See id*. ("Although a plaintiff may seek leave to file a supplemental pleading to assert a new claim based on actionable conduct which the defendant engaged in after a lawsuit is commenced . . . he is not required to do so.")  (collecting authorities); *Proctor v. LeClaire*, 715 F.3d 402, 412 (2d Cir. 2013) ("[a]cts committed after the filing of the complaint are not within the scope of the plaintiff's claim" for *res judicata* purposes).

5

'To date, Plaintiff has not been paid the sums due pursuant to the judgement [*sic*].'" J.A. at 51 (emphasis added). But Horti is not required to plead facts occurring after the prior judgment to support its new claims—only facts occurring after the filing of the prior *complaint*. *First Jersey Sec.,* 101 F.3d at 1464. The district court repeated this mistake later on:

> Plaintiff repeatedly points to SPK transferring most of its assets to JVF. [2019] Complaint. ¶¶ 66, 73, 91, 97. However, Plaintiff later specifies these transactions occurred 'between the spring of 2016 and February 2017,' *i.e. while the parties were litigating the 2015 Contract*.

J.A. a 51 (emphasis added). Horti had the *option* of amending its complaint to encompass these claims, but its failure to do so did not give rise to a *res judicata* bar. *First Jersey Sec.,* 101 F.3d at 1464.

The complaint in *Horti I* (filed on February 22, 2016) raised claims for breach of contract, breach of fiduciary duty, and PACA trust violations against SPK and Shy. The breach of contract claim related to the delivery of cucumbers. The breach of fiduciary duty and PACA claims alleged that the defendants transferred PACA Trust Fund assets to unnamed "third parties" in violation of their statutory duty to maintain those assets for the plaintiff's benefit. *See* Complaint at 7–14, *Horti Americas, LLC v. Steven Produce King, Inc.,* et al., No. 16-cv-889 (E.D.N.Y. Feb. 22, 2016) (the "*Horti I* Complaint").

The second complaint raises separate allegations (many occurring after the complaint was filed in *Horti I*) supporting new claims. According to the complaint, on November 22, 2016, the USDA suspended SPK's PACA license—effectively barring it from operating in the produce industry—for failing to pay a reparation award it had granted against SPK in favor of another produce supplier. It also prohibited Shy from affiliating with the business operations of any PACA

licensee, with or without compensation. On January 25, 2017, the USDA reissued a PACA license to JVF with Jacob Yosofov listed as its president, sole owner, and director (both JVF and Jacob had previously been suspended from operating in the produce industry for PACA violations). Despite his USDA bar, Shy allegedly affiliated with JVF in violation of PACA after its license was reissued. Horti claims that JVF continued the business operations of SPK "at the same location with identical management, employees, equipment and customers, and the same phone and fax numbers." J.A. at 18.

The claims asserted in the *Horti II* complaint are based in significant part on these events (and others) occurring after February 2016. Count I of the *Horti II* complaint is for fraudulent conveyance under Section 276 of New York's Debtor and Creditor Law and raises a claim only against Defendant JVF.[5] Section 276 provides that "[e]very conveyance made and every obligation incurred with actual intent . . . to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." N.Y. DCL § 276.[6] It creates a cause of action to void intentional fraudulent conveyances. *See In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005). Count I asserts that "Defendant SPK transferred its assets to Defendant JVF for inadequate or no consideration in 2016 or 2017, except certain trucks retained by Defendant SPK to operate a freight business solely benefitting Defendant JVF's wholesale produce supply business and the Yosofov family enterprise." J.A. at 18. This purported transfer goes beyond the

---

[5] New York enacted a version of the Uniform Voidable Transactions Act ("UTVA") on April 4, 2020, which replaced the Debtor and Creditor Law, including the provisions related to fraudulent conveyances. *See* Uniform Voidable Transactions Act, ch. 580, sec. 2, §§ 270–281, eff. April 4, 2020. The UVTA is not retroactive; the transfer in this case is still governed by the old Debtor and Creditor Law.

[6] These citations are to the old version of the Debtor and Creditor Law.

limited transfer of PACA Trust Fund monies alleged in the first action by encompassing all of SPK's assets save certain vehicles.

Count II of the *Horti II* complaint states a claim for constructive fraudulent conveyance against only JVF under N.Y. DCL §§ 273–275. These sections of the Debtor and Creditor Law create causes of action against conveyors who are insolvent, N.Y. DCL § 273, possess unreasonably small capital after a transaction, N.Y. DCL § 274, and who intend or believe that they will incur debts beyond their ability to pay, N.Y. DCL § 275. Count II alleges, *inter alia*, that "Defendant SPK's transfer of assets to Defendant JVF was part of a scheme engineered by Defendants [Jacob] and JVF, with the participation of Defendants Shy and SPK, to circumvent PACA sanctions and avoid payment of the debts of Defendant SPK, including the Judgment in favor of Plaintiff." J.A. at 19 (emphasis added). These claims are different from those in *Horti I*, are stated against a different defendant, and are premised on facts occurring after the filing of the complaint in that action.

Count III asserts a conspiracy to commit fraudulent conveyance against JVF and Jacob and alleges "an agreement" with Shy and SPK "to circumvent USDA sanctions under PACA and not pay creditors of their family wholesale produce business, including, without limitation, by means of transferring the assets of Defendant SPK to Defendant JVF for inadequate or no consideration in 2016 or early 2017." J.A. at 20. Counts V – VII state three forms of successor liability against JVF based upon the alleged fraudulent transfer of SPK's assets. Counts I – III and Counts V – VII all assert different causes of action than those raised in *Horti I* and are premised upon facts arising after the complaint in that action was filed.

New causes of action arising during an earlier litigation can have claim preclusive effect if

8

they were fully litigated in that action. The district court seems to have believed that was the case here. It wrote that "Plaintiff had an opportunity to litigate these fraudulent transfer allegations and *did so*." J.A. at 51 (emphasis added). As the basis for this conclusion, it cited Judge Glasser's imposition of discovery sanctions on SPK and Shy and the summary judgment order's reference to those sanctions in the 2016 litigation.

The district court's reading of Judge Glasser's order is in error. The sanctions order does not mention the purportedly fraudulent transfers from SPK to JVF. Instead, it finds that Shy had transferred an amount greater than $143,455.00 to *himself*. There is no allegation that Shy siphoned assets from SPK to himself and then passed them on to JVF. In fact, JVF was not a party to the 2016 litigation, is not mentioned in the *Horti I* complaint, and does not appear in either the sanctions order or the order granting summary judgment. *See Kane v. Nat'l Farm Wholesale Fruit & Vegetable Corp.*, No. 16 CIV. 549 (LLS), 2016 WL 3580489, at *2 (S.D.N.Y. June 24, 2016) (finding no claim preclusion where the plaintiff had previously sued one of two defendants named in a later action in part because the second defendant "played no part" in the earlier action, and "was not a defendant" there, and "was not even mentioned in the complaint.").

The purported fraudulent transfer to JVF is a "subsequent transaction" within the meaning of *First Jersey Securities*. 101 F.3d at 1464. The claims asserted in *Horti II* alleging a fraudulent transfer from SPK to JVF were not litigated in *Horti I* and are independent of the underlying contract claims between the parties. The *Horti II* claims allege fraudulent transfers down a line of alleged conspirators who sought to hide assets of the debtor to avoid the debt and later to avoid the judgment that memorialized that debt. They represent a separate basis for liability against parties not named in the first action.

9

To the extent that the defendants argue that Horti knew sufficient facts in 2016 to allege the fraudulent conveyance in its first complaint, that argument is unavailing. It is the defendants' burden to point to facts in support of a *res judicata* defense. *See Altai, Inc.*, 126 F.3d at 369 ("The burden is on the party seeking to invoke *res judicata* to prove that the doctrine bars the second action."). They have failed to do so here. To the contrary, they deliberately ignored relevant discovery requests in *Horti I* and were sanctioned for it. Any ambiguity on the question does not inure to the defendants' benefit.

Accordingly, we conclude that the district court incorrectly determined that *res judicata* bars Horti's claims.

\*     \*     \*

We **VACATE** the judgment of the district court and **REMAND** for proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court